IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL MAKENSON, | : |
| Plaintiff | : |
| v. | : CIVIL NO. 4:CV-13-2204 |
| LUZERNE COUNTY CORRECTIONAL FACILITY ET AL., | : (Judge Brann) |
| Defendants | : |

### **MEMORANDUM**

July 31, 2014

**Background**

This pro se civil rights action pursuant to 42 U.S.C. § 1983 was filed by Michael Makenson, regarding his prior confinement at the Luzerne County Correctional Facility, Wilkes-Barre, Pennsylvania. The required filing fee has been paid. Service of the Complaint was previously ordered.

Named as Defendants are the Luzerne County Prison, and three prison officials: Acting Warden Major Larson; Medical Director Gunnar Kosek, D.O.; and Nurse George. Plaintiff states that while confined at the Luzerne County Prison on July 8, 2013 he slipped and fell on a wet floor while on his away to use

1

the telephone.  This slippery condition was purportedly caused by a leak in a wall near the phone area.  Following his fall, Plaintiff states that he was transported to a local hospital where x-rays and an MRI test revealed that he had suffered multiple bruises to his lower back, neck, left hip and left shoulder.[1]  See Doc. 1, ¶ IV.  Makenson was prescribed medication for his injuries and returned to the prison.

However, upon his return Makenson was informed that he would have to pay for his medication.  When he refused to do so on July 9, 2013, the Complaint contends that the prisoner was issued a misconduct and subjected to a racial slur by RN George.[2]  Makenson indicates that he refused to pay for his medication which is identified in his accompanying exhibits as being Motrin because payment is not required "when the jail is at fault."  Id. at p. 4.  Plaintiff seeks injunctive relief and compensatory damages.

Presently pending is a motion to dismiss filed by Doctor Kosek.  See Doc.

---

[1] Exhibits attached to the Complaint indicate that Plaintiff had screws in his right knee from pre-incarceration surgery and that Makenson sought administrative relief because of alleged delay in surgical removal of the screws, ineffective pain medication, and lack of physical therapy relating to that condition while in the Luzerne County prison.  However, the Complaint itself raises no claims regarding the treatment of his knee.

[2] Attached to the Complaint is a copy of a July 9, 2013 misconduct which charged Plaintiff disruption of the orderly running of the prison and using abusive or obscene language to an employee stemming from an incident where Makenson was told that he would have to sign a co-pay for Motrin.  See Doc. 1, p. 9.

2

17. The opposed motion is ripe for consideration.

**Discussion**

**Mootness**

With respect to Plaintiff's request for injunctive relief, the adjudicatory power of a federal court depends upon "the continuing existence of a live and acute controversy." Steffel v. Thompson, 415 U.S. 452, 459 (1974) (emphasis in original). "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Id. at n.10 (citations omitted). "Past exposure to illegal conduct is insufficient to sustain a present case or controversy regarding injunctive relief if unaccompanied by continuing, present adverse effects." Rosenberg v. Meese, 622 F. Supp. 1451, 1462 (S.D.N.Y. 1985) (citing O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)).

Furthermore, "[a]bsent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred." Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) (citation omitted); see also Carter v. Thompson, 808 F. Supp. 1548, 1555 (M.D. Fla. 1992).

Plaintiff has notified this Court that he is no longer confined at the Luzernce County Prison and is presently residing in the Haiti. See Doc. 35. There is also

no indication that Makenson will be housed at the Luzerne County Prison in the foreseeable future.  In light of the standards announced in <u>Steffel</u> and <u>Wahl</u>, the Complaint to the extent that it seeks injunctive relief is subject to dismissal on the basis of mootness.

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007)(quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)).

A plaintiff must present facts that, if true, demonstrate a plausible right to relief. <u>See</u> Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action. <u>Id</u>. at 556. A complaint must contain "more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." <u>Ashcroft v. Iqbal</u>, ___ U.S. ____, 129 S.Ct 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." <u>Iqbal</u>, 129 S.Ct at 1949. Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief. <u>See</u> <u>id</u>. at 1950.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Twombly</u>, at 555. The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." <u>Id</u>. at 562; <u>see also</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action). Additionally, <u>pro</u> <u>se</u> pleadings are to be construed liberally, <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).

Doctor Kosek claims entitlement to entry of dismissal on the grounds that "Plaintiff has not alleged that Dr, Kosek acted under color of state law, has made no complaint of any conduct by Dr. Kosek, and has not alleged that he was

5

deprived of any right, privilege, or immunity guranteed by the Constitution." Doc. 18, p. 2.

**Personal Involvement**

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Civil rights claims brought cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

The Complaint names Doctor Kosek as a defendant and identifies him as being the prison's medical director. However, neither the Complaint nor the attached exhibits assert any claim against said defendant. In fact, there is no further mention of Dr. Kosek whatsoever. Since there are no facts set forth which could support a claim that Dr. Kosek was personally involved in the alleged acts of constitutional misconduct, it appears that Plaintiff may be attempting to assert liability against Doctor Kosek based upon a theory of respondeat superior

Based upon an application of the standards set forth in Rode, the Complaint to the extent that it seeks to establish liability against Doctor Kosek solely based upon her alleged role as the prison's Medical Director is subject to dismissal on the basis of lack of personal involvement.

**Medical Treatment**

Doctor Kosek's motion to dismiss next argues that Makenson's claims of inadequate medical treatment are without merit because a serious medical need has not been identified and a specific deliberate indifference claim has not been plead.

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192,

7

197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)).  In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need.  See Spruill v. Gillis, 372 F.3d 218, 235-36 (3d Cir. 2004); Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).  In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component).  Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Mines v. Levi, 2009 WL 839011 *7 (E.D. Pa. March 26, 2009)(quoting Colburn, 946 F.2d at 1023); Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347.  "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347).

With respect to the serious medical need requirement, the Complaint seeks relief with respect to injuries which are described as consisting of multiple bruises to Makenson's lower back, neck, left hip and left shoulder. The injuries allegedly suffered by Plaintiff were not of such magnitude as to satisfy the serious medical need requirement. See Wesson v. Igelsby, 910 F. 2d 278, 284 (5th Cir. 1990)(swollen wrists not a serious medical need); Price v. Engert, 589 F. Supp.2d 240, 246 (W.D.N.Y. 2008)(wrist and hand injuries do not satisfy the serious medical need requirement); Stankowski v. Farley, 251 Fed. Appx. 743, 748 (3d Cir. 2007)(cuts requiring no more than small bandages do not constitute serious medical needs covered by the Eighth Amendment).

Assuming arguendo that the Complaint did satisfy the serious medical need threshold, with respect to Plaintiff's claim that prison officials told him that he would be charged with a co-payment if he wanted a dosage of Motrin, there are no facts asserted which could establish that Doctor Kosek was responsible for or acquiesced in that attempted imposition of a medication co-payment. It is also noted that here is no contention made by the Plaintiff that he was required or asked to make any payment for any of his hospital related expenses. There is also allegation that Plaintiff suffered anything more than temporary discomfort after refusing the Motrin, thus undermining any determination that the inmate had an

9

essential need for the medication. Makenson also does not contend that he lacked funds to make the co-payment, rather, he indicates only that the co-payment should not have been imposed because he required the Motrin for discomfort resulting from negligence by the prison. There is also no claim that the amount of the requested co-payment was excessive.

The United States Court of Appeals for the Third Circuit has recognized that charging inmates for medical expenses is not per se unconstitutional. See Reynolds v. Wagner, 128 F. 3d 166 (3d Cir. 1997); McCabe v. Pennsylvania Department of Corrections, 523 Fed. Appx. 858, 860-61 (3d Cir. 2013) (although prisoners cannot be denied essential or needed medical care, a modest fee may be charged for non-emergency medication); Quinnones v. Fischi, 2012 WL 1072278 (M.D. Pa. March 29, 2012)(Nealon J.). Based upon those considerations, the allegation that there was a single instance where prison officials requested that Plaintiff make a co-payment for a dosage of Motrin does not rise to the level of a viable constitutional violation.

Moreover, this is not a case where a prisoner is alleging that a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994). On the contrary, Makenson acknowledges that following his fall he was taken to an outside hospital where x-

rays and MRI testing was performed and he was released back to the prison with a finding that he had only suffered bruising.

Plaintiff is simply alleging that he was asked to make a co-payment for medication, Motrin, a day after he was treated and released from the hospital, and refused to do so and apparently went without that medication because he felt that said cost should be solely borne by the prison.  Since the Complaint does not set forth facts which would should that Makenson had a essential need for Motrin or lacked sufficient funds for the requested co-payment, under the criteria set forth in Reynolds and McCabe the claim of being asked to pay a co-payment for Motrin on a single instance cannot proceed under § 1983.  Doctor Kosek's motion to dismiss will be granted.  An appropriate Order will enter.

                                      BY THE COURT:

                                        s/ Matthew W. Brann
                                      Matthew W. Brann
                                      United States District Judge