IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL MAKENSON, | : |
| Plaintiff | : |
| v. | : CIVIL NO. 4:CV-13-2204 |
| LUZERNE COUNTY CORRECTIONAL FACILITY ET AL., | : (Judge Brann) |
| Defendants | : |

## **MEMORANDUM**

September 8, 2014

**Background**

Michael Makenson filed his pro se civil rights action pursuant to 42 U.S.C. § 1983 regarding his prior confinement at the Luzerne County Correctional Facility, Wilkes-Barre, Pennsylvania.[1]  According to the docket, Makenson is presently residing in Haiti.  See Doc. 35.  Following service of the Complaint, the Defendants filed respective motions to dismiss.

---

[1] As pointed out by the Remaining Defendants, here is no indication that Plaintiff was a pre-trial detainee.  If he was, his claims would be considered under the due process clause of the Fourteenth Amendment as opposed to the Eighth Amendment, which is the applicable standard for incarcerated persons.  Hubbard v. Taylor, 399 F.3d 150, 158 (3d Cir. 2005).

By Memorandum and Order dated July 31, 2014, this Court granted a motion to dismiss filed by Defendant Medical Director Gunnar Kosek, D.O.  <u>See</u> Docs. 36 & 37.  A motion to dismiss filed by Defendant Registered Nurse (RN) George Mrochko was granted by Memorandum and Order dated August 22, 2014.  <u>See</u> Docs. 38 & 39.

Remaining Defendants are the Luzerne County Prison and its Acting Warden Major Larson.  Presently pending is Remaining Defendants' motion to dismiss.  <u>See</u> Doc. 14.  The motion is ripe for consideration.

According to the Complaint, Makenson slipped and fell on a wet floor while en route to use a telephone during his prior incarceration at the Luzerne County Prison.  Plaintiff's fall, which took place on July 8, 2013, allegedly resulted from a slippery surface caused by a leak in a wall near the phone area.  Following the incident, Makenson acknowledges that he was transported to a local hospital where x-rays and an MRI were performed.  Those diagnostic tests indicated that Plaintiff suffered multiple bruises to his lower back, neck, left hip and left shoulder.  <u>See</u> Doc. 1, ¶ IV.  The Plaintiff was prescribed medication for his injuries and transferred back to the prison.

On July 9, 2013, Makenson states that he refused to authorize a co-payment for his medication.  As a result, the prisoner was given a disciplinary charge and

purportedly subjected to a racial slur by RN Mrochko. Makenson contends that his refusal to pay for his medication, which is identified in his accompanying exhibits as being Motrin, was proper because payment should not be required "when the jail is at fault." Id. at p. 4.[2] The Complaint seeks injunctive relief and compensatory damages.[3]

**Discussion**

Remaining Defendants seek entry of dismissal on the grounds that: (1) there is no viable claim that there was deliberate indifference to Plaintiff's safety needs; and (2) requiring an inmate to make a co-payment for medication is constitutionally acceptable. As noted earlier, the motion is unopposed.

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. When ruling

---

[2] Accompanying the Complaint is copy of a July 9, 2013 misconduct which charged Plaintiff disruption of the orderly running of the prison and using abusive or obscene language to an employee stemming from an incident where Makenson was told that he would have to sign a co-pay for a dose of Motrin. See Doc. 1, p. 9.

Other documents attached to the Complaint indicate that Plaintiff had screws in his right knee from pre-incarceration surgery and that the prison medical staff were refusing to arrange for the surgical removal of those screws and physical therapy. However, the Complaint itself raises no claims regarding Makenson's post-surgical treatment.

[3] This Court's July 31, 2014 Memorandum and Order dismissed Plaintiff's claim for injunctive relief on the basis of mootness.

on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).

A plaintiff must present facts that, if true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action. Id. at 556. A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Iqbal, 129 S.Ct at 1949. Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief. See id. at 1950.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are

4

true (even if doubtful in fact)." Twombly, at 555. The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action). Additionally, pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972).

**Prison as Defendant**

Defendants initially point out that the Luzerne County Correctional Facility is not a properly named defendant. See Doc. 20, p. 7. Courts have repeatedly recognized that a prison or correctional facility is not a person for purposes of civil rights liability. See Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973); Philogene v. Adams County Prison, Civ. No. 97-0043, slip op. at p. 4 (M.D. Pa. Jan. 30, 1997) (Rambo, C.J.); Sponsler v. Berks County Prison, Civ. A. 95-1136, 1995 WL 92370, at *1 (E.D. Pa. Feb. 28, 1995).

Pursuant to the above standards, this Court agrees that the Luzerne County Correctional Facility is clearly not a person and therefore not subject to civil rights

liability. See Thompkins v. Doe, No. 99-3941, slip op. at 3 (3d Cir. March 16, 2000). Accordingly, entry of dismissal in favor of that Defendant is appropriate.

**Respondeat Superior**

Second, a plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Claims brought under § 1983 cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

It appears that Makenson may be attempting to establish liability against Acting Warden Larson based upon his supervisory role within the prison. Under the standards announced in Rode, such an assertion is insufficient for purposes of establishing § 1983 liability against the Acting Warden.

Inmates also do not have a constitutional right to a prison grievance system. See Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138 (1977); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, any attempt by Plaintiff to establish liability against Warden Keen based upon the substance or lack of response to his institutional grievances also does not by itself support a constitutional due process claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

Pursuant to the above discussion, Acting Warden Larson is entitled to entry of dismissal with respect to any claims based upon either his supervisory capacity

or his alleged lack of response to Plaintiff's institutional requests.

**<u>Slip and Fall</u>**

Remaining Defendants contend that Plaintiff's allegations with respect to his slip and fall "do not reflect the deliberate indifference required to impose liability under the Eighth Amendment." Doc. 20, p. 8.

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, and personal safety. See <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994); <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993). Under <u>Farmer</u>, an inmate must surmount the high hurdle of showing that a prison official actually knew or was aware of a substantial risk to inmate safety and deliberately disregarded that risk. <u>Beers-Capitol v. Whetzel</u>, 256 F. 3d 120, 125 (3d Cir. 2001). This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837.

Remaining Defendants acknowledge that "a wet floor may pose a substantial risk." Doc. 20, p. 8. They indicate that since this appears to be simply a garden variety negligence claim arising out of a problem associated with prison

maintenance a viable § 1983 claim has not been stated.

In <u>Davidson v. Cannon</u>, 474 U.S. 344, 347-48 (1986), the United States Supreme Court noted that although a lack of due care had resulted in serious injury to an inmate plaintiff, "that lack of care simply does not approach the sort of abusive government conduct" which would warrant recovery under § 1983. <u>Id.</u> at 347-348. Similarly, in <u>Timko v. City of Hazleton</u>, 665 F. Supp. 1130, 1134 (M.D. Pa. 1986), it was recognized that the negligent operation of a motion vehicle by a police officer in the line of duty was not a basis for civil rights liability. Simply put, allegations of negligence "do not trigger constitutional protections." <u>Whooten v. Bussanich</u>, No. 07-1441, slip op. at 4 (3d Cir. Sept. 12, 2007)(citation omitted).[4]

There are no allegations that any prison official had knowledge that a dangerous condition existed prior to Plaintiff's fall. Second, Makenson offers no indication as to the cause, or how long the puddle existed. Likewise, there are no facts alleged which could establish that this purportedly unsafe condition was anything more than a unforseen occurrence.

As noted in <u>Davidson</u>, carelessness is not sufficient to warrant liability under § 1983. Since there are no facts alleged which would show that Acting Warden Larson or any prison official was aware that the leak created a hazardous condition

---

[4] There is no discernible request by Plaintiff that this Court exercise supplemental jurisdiction over a state law negligence claim. <u>See</u> 28 U.S.C. § 1367

and appreciated that it created a substantial risk of serious harm and deliberately failed to take appropriate action, a viable claim of deliberate indifference has not been stated under Farmer. Accordingly, entry of dismissal with respect to the failure to protect claim is appropriate. See Thomas v. Zinkel, 155 F. Supp.2d 408, 414 (E.D. Pa. 2001)(granting motion to dismiss it is only alleged that prison officials knew of water leak and should have repaired it).

**Medical Treatment**

Remaining Defendants next contend that to the extent that the Complaint includes allegations that Plaintiff's requests for surgery to remove hardware from his knee and for physical therapy were ignored, said allegations lack merit. See Doc. 20, p. 9.

It is initially noted that no such claims are actually set forth in the Complaint. Rather, such assertions can only be inferred from documents attached to the Complaint. As such, those purported assertions of deliberate indifference have not been properly presented for consideration.

Assuming arguendo that such claims were properly raised, this Court agrees that a viable claim has not been asserted against the Remaining Defendants. First, it is noted that there is no assertion that any surgery or physical therapy was denied or delayed because of any Luzerne County Prison policy or custom as contemplated

under <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658, 690-91 (1978). Second, another document attached to the Complaint indicates that Makenson was scheduled for surgery to remove the hardware, thus, undermining any claim that the prison medical staff ignored his need to have the screws removed. <u>See</u> Doc. 1, p. 10. Moreover, another document submitted by Plaintiff indicates that he underwent surgery prior to January 18, 2013 and was scheduled for a post-surgical appointment. <u>See</u> <u>id</u>. at p. 14. The same document states that although physical therapists do come to the prison, there was no physical therapy prescribed for the Plaintiff as of January 18, 2013. See id.

    A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." <u>Estelle</u>, 429 U.S. at 106. When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. <u>See</u> <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 (3d Cir. 1993). If inadequate treatment results simply from an error in medical judgment, there is no constitutional violation. <u>See</u> <u>id</u>. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors,

a constitutional claim may be presented.  See id.

There is no allegation that Acting Warden Larson is a medical professional. The United States Court of Appeals for the Third Circuit in Durmer added that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff.  However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented.  See id.

Based on the reasoning employed in Durmer, since there are no facts asserted which could establish that non-medical Defendant Larson had any personal involvement whatsoever in Plaintiff's medical treatment, it is undisputed that Makenson was receiving care from the prison medical staff, and there is no assertion that Larson delayed or failed to provide Plaintiff with any prescribed medical care for a non-medical reason, under the standards announced in Durmer a viable deliberate indifference claim has not been set forth against the Remaining Defendant.

**Co-Pay**

Remaining Defendants next argue that Makenson's claim that he should not have been required to authorize a co-payment for medication also fails to state a

claim.  See Doc. 20, p.13.

The Complaint alleges that RN Mrochko told Plaintiff that he would be charged with a co-payment if he wanted a dosage of Motrin.[5]  When Makenson refused to do so he was not given the medication and was issued a misconduct charge.  The moving Defendant argues that requiring him to make a co-payment for medication was constitutionally acceptable.  See  Doc. 34, p. 8.  Mrochko allegedly informed Plaintiff that prison policy requires inmates to make co-payments for medications that are given for non-life threatening conditions.

This Court's July 31, 2014 and August 22, 2014  Memoranda previously noted that Plaintiff does not allege that he suffered anything more than temporary discomfort after refusing the Motrin, thus, undermining any determination that the inmate had an essential need for the medication.  Second, Makenson  does not contend that he lacked funds to make the co-payment.   The Complaint asserts only that a co-payment should not have been imposed because negligence by the prison created his need for the Motrin.  Finally, there is also no claim that the amount of the requested co-payment was excessive.

It has been clearly recognized that requiring inmates to pay monetary fees for

---

[5] There is no contention made by the Plaintiff that he  was required or asked to make any payment for any of his hospital related expenses

medical expenses is not per se unconstitutional.  See Reynolds v. Wagner, 128 F. 3d 166 (3d Cir. 1997); McCabe v. Pennsylvania Department of Corrections, 523 Fed. Appx. 858, 860-61  (3d Cir. 2013) (although prisoners cannot be denied essential or needed medical care, a modest fee may be charged for non-emergency medication); Quinnones v. Fischi, 2012 WL 1072278 (M.D. Pa. March 29, 2012)(Nealon J.).  Based upon those considerations, the allegation that there was a single instance where Plaintiff was asked, in accordance with a prison policy, to make a co-payment for a dosage of Motrin does not rise to the level of a viable constitutional violation.

Since the Complaint does not set forth facts which would show that Makenson had a essential need for Motrin, the amount of the co-payment was excessive, or that he lacked sufficient funds for the requested co-payment, under the criteria set forth in Reynolds and McCabe the claim that there was an improper prison policy which required Makenson to pay a co-payment for Motrin on a single instance cannot proceed under § 1983.  The motion to dismiss will be granted.  An appropriate Order will enter.

                              BY THE COURT:

                                s/ Matthew W. Brann
                              Matthew W. Brann
                              United States District Judge